RAFAEL ARGÜELLES FERNÁNDEZ, demandante y apelado, *v.* PEDRO COSME y PROVIDENCIA RIVERA, demandados y apelantes.

No. 6458.—*Sometido:* Noviembre 6, 1934. *Resuelto:* Noviembre 23, 1934.

*Armando Miranda,* abogado de los apelantes; *Ignacio Morales Acosta* y *Dubón & Ochoteco,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

La única cuestión a resolver en este caso es la del montante de las costas que tienen derecho a recobrar los demandados.

El memorándum por ellos presentados comprende las siguientes partidas: $15 por honorarios del Secretario; $40 por certificaciones expedidas por el Secretario; $45 por honorarios del taquígrafo y $1,500 por honorarios de abogado. Fué impugnado. La corte aprobó las partidas de honorarios del Secretario y del taquígrafo, eliminó la de certificaciones y redujo la de honorarios de abogado a $75.

La partida de cuarenta dólares por certificaciones estuvo bien eliminada porque los demandados no proporcionaron a la corte la evidencia suficiente para justificarla.

¿Estuvo acertada la reducción de los honorarios de abogado a setenta y cinco dólares? Para contestar la pregunta debemos estudiar los hechos y las circunstancias que concurren.

El demandante Argüelles en marzo de 1932 pidió a la Corte de Distrito de Bayamón que decretara el desahucio de los demandados de cierta finca suya que estaban ocupando sin pagar canon o merced.

Por medio de abogado gestionaron los demandados que se les declarara pobres y obtenida la declaración contestaron la demanda alegando que no aducía hechos suficientes para determinar una causa de acción y negando todas y cada una de sus alegaciones.

Fué el pleito a juicio y seis días después de practicadas las pruebas y de quedar el caso sometido a la corte para su decisión, presentó el demandante una moción desistiendo del mismo y la corte dictó sentencia teniéndolo por desistido con las costas pero excluyendo de ellas los honorarios de abogado. Apelaron los demandados y obtuvieron que la sentencia fuera revocada. *Argüelles* v. *Cosme,* 44 D.P.R. 169.

Volvió el caso a la corte de distrito de su origen que lo falló entonces por sus méritos declarando la demanda sin lugar, sin especial condenación de costas. Apelaron de nuevo los demandados en cuanto al pronunciamiento de costas y obtuvieron de igual modo su revocación. *Argüelles* v. *Cosme,* 45 D.P.R. 143.

Fué entonces que presentaron el memorándum de costas a que nos referimos al principio de esta opinión.

Descartando el trabajo realizado ante esta Corte Suprema por no ser recobrable de acuerdo con la ley y la jurisprudencia, resulta de lo expuesto con toda claridad que el letrado de los demandados tuvo necesariamente que dedicar varios días al estudio del asunto y a la defensa de sus clientes en corte abierta. No se trata de un pleito complicado que envuelva cuantiosos intereses, pero sí se trata de un litigio que entraña cuestiones de hecho y de derecho serias e interesantes como se concluye fácilmente examinando las alegaciones y la

transcripción de la evidencia que sirvieron de base a la sentencia de la corte sobre los méritos y de la opinión emitida por su ilustrado juez para fundarla, una parte de la cual nos parece oportuno transcribir. Dice:

"1. Nuestra legislación civil en nada se desvió del Código Civil Español al cubrir materia tan compleja como la de aparcería hasta hace apenas un año. El Código Civil Revisado de 1902, en su artículo 1482, siguió las mismas palabras del artículo 1579 del Español: 'El arrendamiento por aparcería de tierras de labor, ganados de cría o establecimientos fabriles e industriales, se regirá por las disposiciones relativas al contrato de sociedad y por las estipulaciones de las partes, y en su defecto, por la costumbre de la tierra.' La primera pregunta que se hicieron los intérpretes de la ley fué la siguiente: ¿Qué es la aparcería? Manresa respondió: 'Inútil será buscar en el Código su definición legal. Todo el mundo está conforme, sin embargo, en entender que hay aparcería cuando una persona cede a otra el goce o uso de una cosa, recibiendo en cambio una parte alícuota de los frutos que ésta produzca.' La inmediata pregunta fué esta otra: ¿Cuál es la naturaleza jurídica de la aparcería? El Código califica de arrendamiento a la aparcería y decide que se regirá por las disposiciones relativas al contrato de sociedad. Los tratadistas se dividen en la interpretación que debe darse a la disposición legal; y los tribunales españoles no logran fijar una cónsona y unánime conclusión y al fallar dictan la parte doctrinal según aconteciere en el recurso. Y surge la tercera pregunta: ¿Procede el desahucio en los casos de aparcería? Como puede verse por las sentencias de 29 de julio de 1902, 2 de diciembre de 1904, 4 de julio de 1908, 20 de enero de 1911, 2 de junio de 1913, 12 de marzo de 1917, los rigores de los primeros fallos han menester ser templados por otros posteriores.

"Ya en 1905 reconocióse la necesidad de llevar a cabo la reforma porque 'fuerza es atender los requerimientos de necesidades especiales que salen al paso de legisladores y gobernantes, en relación con distintos puntos de derecho, no bien definidos en el Código Civil, o desenfocados de los principios que prevalecen en la vida jurídica moderna.'

"No tenemos noticia de que se haya afrontado en España la reforma. En Puerto Rico no se hizo, aunque parcialmente, hasta el 4 de mayo de 1931, en que se aprobó la Ley número 76. Hemos dicho parcialmente, porque la ley sólo parece referirse a la aparcería agrícola, dejando subsistente el Código en orden a la aparcería pecua-

ria y de establecimientos fabriles o industriales que tanto difieren de la de predios rústicos.

"Era necesaria la reforma. El contrato de aparcería es una de las manifestaciones más generalizadas entre nosotros de la explotación agrícola, ya que, como acertadamente se ha dicho, mediante la aparcería, el capital y el trabajo coinciden en una acción común; en una coparticipación inmediata de provechos y riesgos, que defienden y garantizan a la vez compenetrándoles íntimamente, el interés del propietario de la tierra y el del aparcero que cultiva.

"El legislador puertorriqueño respondió a la primera de las históricas preguntas, trasladando al estatuto la definición siguiente: 'Se entenderá por contrato de aparcería agrícola todo convenio verbal o escrito, en cuya virtud convenga una de las partes en cultivar tierra labrantía de la otra y ésta en darle por ese trabajo una participación en los frutos que se colecten o en el valor que los mismos tuvieren en el mercado.' Respondió a la segunda de las preguntas desechando la calificación de arrendamiento y estableciendo la existencia de un acto contractual especialísimo; y rechazando toda regencia por las disposiciones relativas al contrato de sociedad, estableció las reglas por las que debe regirse. Y respondió a la tercera estableciendo el procedimiento de desahucio. Nuestro legislador salvó así las dificultades con que parecía tropezarse para disolver una obligación que, en consonancia con su naturaleza, debe tener toda la flexibilidad precisa para plegarse a las modalidades de un enjuiciamiento sencillo y rápido.

"Decimos todo esto para resolver, declarándola sin lugar, la excepción previa de falta de causa de acción alegada por el demandado. La demanda contiene, a la luz de la Ley número 76, todo cuanto es necesario alegar en casos de esta naturaleza, y quizás algo más."

Prosigue el juez de distrito analizando la prueba practicada que ocupa cuarenta y tres páginas de la transcripción de los autos y concluye que no demuestra que el contrato verbal de aparcería que surge de la misma estuviera vencido a la fecha de la interposición de la demanda y por tanto que no procedía decretar el desahucio solicitado.

Dejando, pues, hablar a los hechos por sí mismos, se impone la modificación de la sentencia porque la suma de setenta y cinco dólares fijada por la corte para el pago de honorarios de abogado resulta claramente inadecuada. Dos-

cientos cincuenta dólares, atendidas todas las circunstancias concurrentes, nos parece que es la suma menor que puede fijarse para ello.

Debe modificarse en tal sentido la resolución apelada, y así modificada, confirmarse.